This case is ADVANCED TECHNOLOGY and Materials, et al. v. United States, et al., 2013, 1305, and 1423. It appears we're moving from coal to diamond, both of which are based on carbon. So with that, we'll listen to Mr. Neely. Thank you, Your Honor. May it please the Court, I'm Jeffrey Neely on behalf of ATM Technology, also known as Beijing Gangyang, which is the producer of the Diamond Solidity issue. The issues before the Court today are two-fold. One, whether the Court below had jurisdiction to issue the injunction in question, were the entries enjoined or not before the Court in the appeal that it was hearing. And B, whether the Court below otherwise abused its discretion with regard to the issues of the injunction by not properly considering the likelihood of success on the merits, among other issues. And they could not do this because no complaint before it, it had no complaint before it that had addressed the Section 129 case upon which it based its injunction. The injunction at issue was issued in an appeal of a Commerce Department original investigation being heard by the Court. That was the case in which the injunction was issued. The appeal itself of the original investigation affected no entries whatsoever, which is the nature of any appeal of an original investigation. The domestic industry represented here, in effect, recognized this fact by appealing the final results of the Commerce Department's first review of diamond saw blades. Had the Court below been able to affect future entries by its decision in the original investigation, then there would have been no reason for the domestic industry to appeal the first review at all. And it certainly would not have sought an injunction in the original investigation, and it would have sought an injunction in the original investigation appeal instead of doing it in the first review, which it instead did. But the domestic industry knew full well that it had to appeal the first review to affect those entries, and it did so. It also properly sought and obtained a preliminary injunction in this first review. The injunction here is with regard to a Section 129 case, which came much later than the original investigation, and which at the time that the injunction issued had not been appealed. The Commerce Department, pursuant to instructions from the U.S. Trade Representative, and under the international obligations of the United States, announced on a preliminary basis that it intended to revoke the dumping order on Gunion, AT&M, and its affiliated companies as a result of a recalculation of the dumping margins. This was a result of a lawsuit, a WTO case by the United States, which is the nature of a 129 review. As you're reciting the events, let me just make sure I understand. With respect to a couple of events that have occurred since the briefing, I want to make sure I've got that right. First is the 129 was issued and has been appealed, correct, to the CIT? Subsequent to the issuance of an injunction, it has been appealed. But that's before the CIT, same CIT judge, I take it, right now? Correct. The second event is the same, again, the same CIT judge, I take it, very recently, has ruled in response to Commerce's position in final determination, has ruled that AT&M is not entitled to a separate calculated rate. Is that correct? Yes, and the appeal time for that is not run, of course. But the consequence of that would be that now all these entries, both past and future, would be subject to, assuming that's upheld, would be subject to a substantial anti-dumping duty without regard to zeroing. Is that correct? If that, if the decision of the court, the October 11 decision is upheld, then it doesn't matter, the zeroing methodology issue doesn't matter with respect to your client's SEC rate. No, we wouldn't say that. We wouldn't say that for this reason. The zeroing methodology took place as a result of a WTO dispute settlement. It took place as part of the international obligations in the United States. This is an issue that has never come before this court before, or before the CIT before. What is the interplay? I'm not looking for an answer at that level of, you know, jurisprudential level. I'm looking for a dollars and cents answer. Is your client, will your client be on the hook for a substantial anti-dumping duty if the October 11 order sticks, not by itself? Okay, explain why. Because the October 11 determination, decision by the court, only affects the original determination by the Commerce Department. That affects nothing. That affects nothing. It may be something that is... That's a starting point. It's a starting point and it's certainly something the court will consider. Being on the hook for money, which I believe is what your question is, really comes in the first review. Okay. So, at this point, even with that October decision, and even if we were to appeal it and this court never heard it, we would not have it done. That would only come as a result of a dispute. But the 129 proceeding presupposes that they're entitled to a separate rate, and the only question is how to calculate the separate rate. If they're not, never entitled to a separate rate, then all of that discussion about zeroing methodology becomes moot, doesn't it? Well, whether it becomes moot or not is, I think, a question that, what I was trying to say before, this court has not heard. And that is, what is the interplay between the section 129 case and the international obligation to the United States, which are running on one track, and how is that affected by a decision by the Court of International Trade with regard to the separate rates? Yes, it could have an effect, absolutely. There's no doubt about it. But that's a decision that has never been addressed, frankly, by either the Court of International Trade or by this court. So, I think that becomes an open question. From our point of view, the more important question here, the reason that we appealed this injunction, is different. And that is that all of those issues, all of those issues with regard to whether an injunction should issue, were properly addressed in the context of a 129 appeal and not in the context of the original investigation. One reason for that is that when the judge issued the injunction below, he did not have before it any complaint that had anything to do with the section 129. Well, I mean, even if you ultimately argue that somehow those two proceedings are to be separated or they can't impact each other, the fact that that question is undecided, that wouldn't go to jurisdiction. I mean, the fact that there is at least an argument that the two are related and that the one can impact the other would seem to give the court jurisdiction over all the entries. I don't think that's correct. If that were the case, if the court had jurisdiction over all future entries as a result of the original investigation, and there would have been no need to ask for an injunction in the first review, there would have been no need to ask for an injunction in the second review, the judge, as a result of the original investigation, would simply have the right to appeal or to enjoin all future entries under any conditions. That has not been the case ever. I think the statute is very clear that each one of these segments stands on its own. And that's why, when you have an original investigation, there was no injunction in the original investigation at all. In fact, there was no injunction in the original investigation after the first review was finished. Instead, what the domestic industry did quite properly is they went to the judge in the context of the first review and asked for an injunction and obtained one. And we didn't have any dispute with that particular injunction. Same happened in the second review. I assume that in the third review the same thing will happen. The same thing should have happened in the section 129 case. We're not disputing that the judge has jurisdiction to issue an injunction in the 129 system. So, if we should agree with you and we send this case back to the trial court, which now has the 129 case before it, is there any reason the trial court couldn't simply enter exactly the same injunction with respect to the 129? We think it would not be proper for that court to do so. Certainly, we're not here just on security. But you would have jurisdiction to do so, and you'd be arguing that it just satisfied the four factors. Correct. But the first issue, which is the main part of your brief, drops out, right? Oh, absolutely. Absolutely. We would agree that if it's sent back, the judge would have jurisdiction to issue an injunction. We don't think that the four factors are met for a variety of reasons. We think that we would win that if the judge answered it properly. But, absolutely, the jurisdictional issue would drop out completely. No doubt about it. All right, so why don't you shift to the fourth rule and then pass your time. Okay. You wanted to save a good portion of time for a follow-up. You can continue or save it. I think I'll just save it, Your Honor, and let the other side have it. Thank you. Mr. Packard. Good morning, Your Honors. My name is Daniel Pickard here on behalf of the Diamond Salt Lake Manufacturers Coalition. May I please the court? Yes. The current matter, in essence, has to do with the court issuing an injunction to preserve its jurisdiction, to protect the right to review certain entries and to maintain the status quo. It did this upon the standard four-factor test. Although I would note at the beginning, and consistent with Timken, courts acting to protect their jurisdiction, preserve jurisdiction, aren't required to go through the four-factor test. But there is something particularly extraordinary here. It's a relatively complicated piece of litigation with several different moving parts. What the court did was it issued an injunction to prevent finality in regard to certain entries until all the litigation was concluded. That's under the use of discretion. In regard to the standard four-factor test, consistent with Timken, the court examined irreparable harm. In this matter, in the absence of an injunction, certain entries would have liquidated. And we as plaintiffs, or we as petitioners, wouldn't have been in a position to judicially challenge them. Once the liquidation had occurred, it would have been final. Moreover, the court recognized that it had jurisdiction over this matter. It was seized of the issue of the appropriate calculation of the double margin in the original investigation. And in light of the intervening 129, decided to issue an injunction and found that, but for the issuance of an injunction, these entries would liquidate and they would be no longer subject to judicial review. But wouldn't you have had the right to appeal? We would have had the right to appeal. And you did. And we did, in fact, appeal. But the entries would continue to liquidate in the absence of an injunction. So the injunction just prevented a final calculation of the double margins until all litigations concluded. But you could have stopped the injunction at the time of the appeal of the 129, right? We certainly could have. And I believe it would be proper under either case that the injunction could have properly issued under, and did properly issue, under the appeal of the original investigation. And the court would have had jurisdiction and it would have been appropriate for it to issue the injunction in the separate appeal of the 129. But you didn't seek an injunction under the original investigation in the beginning. Correct. Because there wasn't a threat until really the 129 came along of these entries liquidating without being subject to judicial review. And there were a couple of reasons why we chose to file the injunction in the appeal of the original investigation rather than the 129, even though both would have been proper. It's really kind of in reverse order of importance. We had some concerns kind of on a tactical level. If we waited to file the injunction in the 129, if maybe that would give rise to a timeliness challenge, there would be issues with unringing the bell. There could have been some issues in regard to delays with the issuance of the injunction. Consequently, certain imports would have liquidated and been outside of the scope of judicial review. Really, more importantly, there were two big reasons. There was no reason to wait. This issue was squarely before the court pulled out. The 129 came up, so we decided in order to preserve jurisdiction, make sure that nothing liquidated until the conclusion of litigation that it was appropriate to file the injunction in the 129. There was a reason to wait, I suppose, in that by going through the procedure you did, you bought yourself an issue on appeal that you could have managed to bypass if you had waited for the 129. But you made the choice. It was not a cost-free choice. I'll put it that way. We'd be here regardless. But you'd be here on a much shorter set of issues. You'd be here on the four factors. I think your opposing counsel has conceded that if this had come up in the 129, you wouldn't be here on the question of jurisdiction. That's correct, Your Honor. Okay. Nonetheless, we found it to be most appropriate to do it in the original investigation because it was most consistent with the heart of that litigation, really. What was the appropriate calculation of the anti-dumping marks in there? And we would suggest that it's certainly not an abuse of discretion for the court to issue it in that determination, even though it could have been equally appropriate to issue it in a distinct abuse of litigation. Let me ask you about the line of cases from the Court of International Trade that deal with the issue of prospective injunctions, and that's from Nucor going back all the way into the 80s. Your opposing counsel relies in his brief on those cases. What's your answer to those cases? Why are those cases not – I understand they're not binding on us, but why aren't they important data points for us to consider in determining whether injunctive relief of the prospective sort ought to be granted routinely in these kinds of cases? They're distinguished on two primary bases. One is a very important factual but somewhat complicated scenario, and another has to do directly with a legal issue. Let's hear both of them. So in regard to the factual issue, a lot of the new court cases, the Association of Importers, while there's language in regard to irreparable harm, they really turn on the issue of likelihood of success on the merits. And it makes sense – and this is going to get in the weeds a little bit with the court's indulgence. It makes sense, for example, if in the International Trade Commission at the end of an investigation made a negative determination. In order to get a prospective injunction by representatives of domestic industry, I would have to argue that I had a high likelihood of success on the merits that I could reverse the ITC's determination, which, as this court knows, almost never happens. It did happen in this case, but in 30 years of judicial review, I can only think of one or two cases where the ITC actually reversed itself. So for the movement to be able to prove that they have a high likelihood of success on the merits in this scenario is extraordinarily difficult. And generally, it's not messy. And you say your case is different because you've gone – particularly as of October 11th, you've gone most of the way towards getting a final judgment in your favor. Well, yes, exactly. So at the time of the injunction, the court below recognized that… It had already sent it back a couple of times, and it was waiting to decide the issue on remand to take it. Exactly. And what the agency did is it actually – we did prevail on the merits on the agency below, and that decision has been affirmed. It may be subject to a later appeal. Right. But as a factual matter, there was – and it's limited to this kind of particular case. Okay. Now you were – if you're done with the facts, then how about the legal issue? This is different in that this court was – I'm sorry. The court below has already seized the matter. It had taken this issue up, and then there had been an intervening event that could possibly divest it of jurisdiction. And consequently, the court, consistent with Timkin and established case law, issued the injunction to make sure that it could preserve Timkin's jurisdiction, which is also a significant difference from the CIT cases that are set in law. Well, if you were stuck just appealing an injunction in relation to the 129 proceeding, you'd have a problem with likelihood of success on the merits. So wouldn't you? Because in that proceeding, the issue was whether zero-outing methodology was permissible or whether the WTO decision would prohibit that.  But I think we would still have, by relying on the fact that the agency had reversed itself, I think then you can make a pretty strong argument in a separate appeal in the 129, that we had a high likelihood of success on challenging the implementation of the 129 because the basic factual premise that the 129 was based on had changed. I think being that the ATM was not entitled to a separate rate. Right. The determination that in the original investigation that it was entitled to a separate rate. And now that the agency has found that the company is essentially under control by the government. Another point that I was left confused coming out of the briefs, and you can clarify if you would. Assuming that you had lost your effort to get an injunction, because 129 is prospective only, you would still have some entries that were suspended on which liquidation was suspended that would be open to the court to ruling in your favor.  Correct. So it's not as if the court would lose jurisdiction over the dispute, it would simply lose some of the entries. It wouldn't render the dispute moot. In other words, it would just give you less room for what you regard as a satisfactory rendering. I think that's partially correct, Your Honor. So that subject entries, for example, that had come in under the first and second administrative review, 2009. I understand the part that's correct. Tell me about the part that's incorrect. In that it would affect imports that are coming in today. Right. Would be no longer subject to... I understand, but still the court would not lose jurisdiction, would not suddenly say, I have no case before me because I have no relief to be granted. Correct in regard to past entries, not in regard to current and future entries. Okay. Which was the purpose of filing this injunction, to protect the domestic industry, which has already been found to be materially injured by the International Trade Commission, from imports that have now been determined to be coming from an entity that's owned and controlled by the Chinese government at high margins. That the purpose of the injunction was to kind of maintain the status quo, so that there was no finality in regard to the imports that are coming in today, and which are still subject to dispute. But to the extent that some of the cases relied on by your opposing counsel based the rationale on the fact that there won't be a complete deprivation of remedy, there will be some remedy, then you're still in the some remedy camp, right? Yes, Your Honor. All right. And I would suggest, first off, some of those cases, well, those cases are clearly from the Court of International Trade, not by you on this court. There are a lot of them. It gives us pause when you see eight decisions coming from a number of different judges in the Court of International Trade, an expert court in an area that we're not experts, telling us one thing unanimously. I don't see any cases, arguably, except for this one, going the other way. That gives us some pause. I agree, Your Honor, and I believe that's wholly reasonable. I think there are important distinctions to make. First off, some of those decisions are not fully consistent with the idea of Tim Kempery. The idea that entries coming in that are allowed to go final before the court below or before this court has conclusively resolved relevant litigation amounts to irreparable harm. I think that principle is equally applicable to past entries as to future entries. You said Temkin. Do you mean Zenith? I'm sorry. Yes, Zenith, Your Honor. Okay. Moreover, this is a distinct factual pattern. It is unlike those previous cases in that the evidence in regard to the four factors is so much stronger. I think, more importantly, this goes to the heart of your concern. It goes to the standard of review. While it may not have been abuse of discretion for those courts previously to deny the injunction, it doesn't mean that the injunction issued here was unreasonable or was contrary to law or a factual misunderstanding.  It wasn't abuse of that discretion in order to prevent irreparable harm, especially in light of the factors that we've discussed previously, the high likelihood of success on the merits, the fact that the potential harm to my client is that injurious imports come in and are never subject to judicial review or remedy. The burden on the other side, as this court and previous courts have clearly recognized, is really an administrative inconvenience, so much so that the Department of Justice has dropped out of this appeal. In a way, really, of the potential harm to our client, which has already been found to be injured, and the fact that there's been a new determination that these imports are unfairly priced, issuance of an injunction just maintains status quo until the litigation is concluded. I would respectfully submit it's wholly appropriate. Thank you, Mr. Patrick. Mr. Neely has some time left, four and a half minutes. Thank you, Your Honor. I'll just take a couple of minutes on this. First of all, on the jurisdictional issue, whether this injunction had been issued or not, the Court of International Trade would have issued exactly the same decision on October 11th. I think that tells us pretty much everything we need to know about whether this injunction is necessary to preserve the jurisdiction of the court on the appeal that it had before them. This case made absolutely no difference to that. There's a lot of case law in a variety of contexts about the concept of an injunction that's necessary to preserve jurisdiction, and as I understand that case law, it talks about not just the fact of jurisdiction, but the ability to fashion an appropriate remedy. Yeah, but I think that the court below and my counsel here has kind of put the cart before the horse, so to speak, that in fact there has to be jurisdiction of the court below before it can preserve that jurisdiction. And so the first and primary thing that needs to be decided is whether there was jurisdiction. Now, surely they are not left without any remedy here. The remedy is pretty apparent. We've been talking about it this morning, which is they can file for the injunction in the Section 129 context. But then you would have argued that the only issue in the 129 is whether you use zeroing or something else, right? And so therefore they wouldn't have a likelihood of success. Well, but again, that goes to, you know, I think that the jurisdictional issue has to be decided first. The Congress laid out very specific statutory bases for appeal, and it's for each segment of the appeal that's separately appealable. Perhaps the result here in the 129 is not a result that they like, and perhaps the Congress will look at it again and say, this is a really bad result, and we should go back and change the statute. But the statute is the statute, and that's what gives the court below its jurisdiction, and not the notion that it would be wrong somehow for them to, you know, have a bad result in the 129. I do think that the 129 does present huge problems for my opponent here on the likelihood of success on the merits, and that's precisely why they went to the Court of International Trade in the context of a wholly different proceeding to try to get this injunction, and obviously they were successful. That is of concern, and again, I think this is really an issue that if there's a gap in the statute, it's something that the Congress needs to address. Only one other thing I think I would add at this point, and that is I think that the decision of the Court of International Trade in the New Court case, Judge Ridgway, in that decision, gives a very detailed and quite good discussion of the irreparable harm standard. So I'm sure that the Court has reviewed that, but I think that that addresses that issue in addition to the likelihood of success on the merits, and that's why we're here. We're not here for some academic exercise, as I said. We think it's more the jurisdiction. So thank you very much. Thank you. Mr. Neely, we'll take the case under review.